VI.  DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL DURING HIS CONSTITUTIONALLY PROTECTED STATE APPEAL OF RIGHT IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

VII. DEFENDANT HAS SHOWN "GOOD CAUSE" AND "ACTUAL PREJUDICE" AND IS ENTITLED TO HAVE THIS COURT REACH THE MERITS OF THESE CLAIMS.

On January 16th, 2004, the Honorable Craig Strong of the Third Circuit Court, Criminal Division issued an Opinion and Order Denying Relief (See Appendix-F). Defendant now submits his Application For Leave To Appeal raising the same issues.

**I. THE COURT ERRED REVERSIBLY IN FAILING TO *SUA SPONTE* INSTRUCT THAT THE KILLING AND LARCENY WERE UNRELATED, OR ALTERNATIVELY COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST THIS INSTRUCTION.**

A properly instructed jury is a fundamental part of the right to a jury trial and is guaranteed by Due Process. US Const, Amends V, VI, XIV; Mich Const 1963, Art 1, §§ 17, 20. Beck v. Alabama, 447 US 625; 100 S Ct 2382; 65 L Ed 2d 392 (1980); Vujosevic v. Rafferty, 844 F.2d 1023, 1027 (CA 3, 1988).

Even in the absence of request or objection, the trial court has an obligation to fully and fairly present the defense case to the jury in an understandable manner. People v. Ora Jones, 395 Mich 379 (1975). Instructions must adequately present the defenses to the jury under the testimony developed at trial even in the absence of objection. People v. Townes, 391 Mich 578 (1974); People v. Reed, 393 Mich 342, 349-350 (1975); also see 22 Michigan Law and Practice, Trial, §236, p. 386.

According to the evidence presented by the prosecution the victim was already dead from strangulation and a knife wound to the throat when the cellular phone and $5.00 were allegedly taken. The prosecution's questions assumed that the victim was dead. The prosecutor thus failed to prove that the victim was still alive. So the cellular phone and the $5.00 was not the property of a living person against whose consent it could be taken. Sergeant Simon insisted that Defendant told her that he took the cell phone and $5.00 to make it look like somebody broke into the house. (T II, 6-7, 25). Remarkably, even the victim's husband testified that other than the phones, nothing was missing, as his guns, fishing equipment, stereo and television were not taken. (T I, 148-149).

There is no standard of review because this Court has made no ruling here. This was plain error which "undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice." United States v. Young, 470

...S 1, 13 (1983); People v. VanDorsten, 441 Mich 540, 545 (1993).

In United States v. Bolden, 514 F.2d 1301, 1307-1309 (CA DC, 1975), the court explained:

> While the statute defining the crime, and the court's instructions in this case, require for conviction simply that one "kill another in perpetrating or in attempting to perpetrate any robbery," we have held that mere coincidence in time between the murder and the robbery is insufficient to support a felony-murder conviction. United States v. Heinlein, 160 US App DC 157, 490 F.2d 725, 736 (1973). "[T]he statute embraces occasions when the jury may properly be urged to find that the homicidal act fell outside the scope of the felonious crime which the parties undertook to commit." Ibid. at 737. A jury may therefore acquit where it finds that the robbery was merely an afterthought following the homicide. United States v. Mack, 151 US App DC 162, 466 F.2d 333, 339, cert denied, 409 US 952; 93 S Ct 297; 34 L Ed 2d 223 (1972).
>
> * * *
>
> In response to the jury's questions, the trial court should have informed the jury (1) that to convict on felony murder it was necessary that the intent to rob be formed **before** the homicide, see United States v. Mack, supra, 466 F.2d at 338-339; (2) that "intent" can only be proven by action beyond mere preparation, since until that time defendants could have abandoned the plan without legal liability, see Mumford v. United States, 76 US App DC 107, 130 F.2d 411, 413, cert. denied, 317 US 656; 63 S Ct 53; 87 L Ed 527 (1942); and (3) that even if the jury found a robbery did occur, that finding by itself did not settle the issue whether the intent to rob was formed before or after the homicide. (Emphasis added; footnotes omitted).

See also People v. Rice, 61 AD2d 758; 402 NYS2d 191 (1978).

Recently, on July 11th, 2002, the Michigan Supreme Court issued it's opinion and order in a published case entitled People v. Randolph, 466 Mich 532 (2002), whereby the Court overruled the Michigan Court of Appeals, 30 year error of expansion of the codified common-law requirements of robbery through adoption of the "transactional approach," as that Court stated:

> "In summary, at common law, a robbery required that the force, violence, or putting in fear occur before or contemporaneous with the larcenous taking. If the violence, force, or putting in fear occurred after

> the taking, the crime was not robbery, but rather larceny and perhaps assualt. Hence, the transactional approach" espoused by the Court of Appeals is without pedigree in our law and must be abandoned. Sanders, LeFlore, Turner, and Tinsley are overruled. 466 Mich at 546.

The court erred reversibly in failing to sua sponte instruct that if the killing and larceny were unrelated then Defendant was not guilty of felony murder. This was a critical defense that was never explained to the jury. Defendant is entitled to a new trial.

Alternatively counsel was ineffective in failing to request this instruction or argue this theory. People v. Bennie Thomas, 406 Mich 971 (1979)(Levin J.)(dissenting to denial of leave), Justice Levin argued that counsel was ineffective, in a case similiar to the instant case, for failing to argue that the theft and murders were unrelated -- that the intent to steal was formulated after the killings. In that case there was evidence of a robbery and a love triangle.

In the instant case there was evidence of a larceny after a killing. Counsel should have either argued alternatively that the theft was an afterthought, according to the prosecution's evidence, or at least requested a clarifying instruction on this point. Counsel denied Defendant a viable defense and so was ineffective.

## II. DEFENDANT'S CONVICTION MUST BE REDUCED TO SECOND DEGREE MURDER WHERE THE SUBSEQUENT ALLEGED LARCENY OCCURRED FROM A DEAD BODY.

Defendant was charged with felony murder in the perpetration of any larceny. The Court instructed on misdemeanor larceny, requiring the finding of five elements: (1) that the Defendant took someone else's property, (2) **that the property was taken without consent,** (3) that there was some movement of the property, (4) that there was an intent to permanently deprive the owner of the property, and (5) that the property was worth something when taken. (T V, 12, CJI2d 23.1).

The elements of larceny require that the defendant take the property of some person without consent. But here according to the evidence presented by the prosecution the victim was already dead from strangulation and a knife wound to the throat when the cellular phone and $5.00 were allegedly taken. The prosecution's questions assumed that the victim was dead. The prosecutor thus failed to prove that the victim was still alive. So the cellular phone and the $5.00 was not the property of a living person against whose consent it could be taken. Sergeant Simon insisted that Defendant told her that he took the cell phone and $5.00 to make it look like somebody broke into the house. (T II, 5-7, 25). Remarkably, even the victim's husband testified that other than the phones, nothing was missing, as his guns, fishing equipment, stereo and television were not taken. (T I, 148-149).

There is no standard of review because this Court made no ruling here. This was plain error which "undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice." United States v. Young, 470 US 1, 16 (1985). It caused manifest injustice. People v. VanDorsten, 441 Mich 540, 545 (1993).

A properly instructed jury is a fundamental part of the right to a jury trial

and is guaranteed by Due Process. US Const, Amends V, VI, XIV; Mich Const 1963, Art 1, §§ 17, 20. Beck v. Alabama, 447 US 625; 100 S Ct 2382; 65 L Ed 2d 392 (1980); Vujosevic v. Rafferty, 844 F.2d 1023, 1027 (CA 3, 1988).

Even in the absence of request or objection, the trial court has an obligation to fully and fairly present the defense case to the jury in an understandable manner. People v. Ora Jones, 395 Mich 379 (1975). Instructions must adequately present the defenses to the jury under the testimony developed at trial even in the absence of objection. People v. Townes, 391 Mich 578 (1974); People v. Reed, 393 Mich 342, 349-350 (1975); also see 22 Michigan Law and Practice, Trial, §236, p. 386.

In People v. Hutner, 209 Mich App 280 (1995), the court similiarly held that the defendant's murder and subsequent sexual penetration of the victim did not constitute felony murder. The victim was no longer alive and so was not a "person" who could be sexually assualted and refuse consent, as in CSC 3. And sexual penetration of a dead body was not one of the enumerated felonies under the felony murder statute.

So too here the larceny required a live victim — a person who owned the property and who could deny consent. While it might be argued that there was evidence here of a death during an attempt to perpetrate a larceny, alternatively counsel was ineffective in failing to argue and request an instruction on the theory that the death and larceny was unrelated. See Issue I, supra. Counsel was also ineffective in failing to argue or request instruction on the fact that there was no live victim, a necessary element of a larceny.

III. **DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL WHERE THE PROSECUTOR PRESENTED 404(B) EVIDENCE THAT WAS UNFAIRLY PREJUDICIAL.**

Defendant submits that the prior bad acts, although arguably admitted for a permissible purpose, was far more prejudicial than probative, denying defendant his due process right to a fair trial. US Const, Ams X, XIV; Mich Const 1963, Art 1, § 17.

Defendant was charged with felony murder in the perpretation of any larceny. According to the prosecution's theory and evidence presented the defendant was the person who killed Virgie Perkins because he had her cellular telephone 4 days after she was killed. Defendant admitted he used crack cocaine, and because he signed the confession that Officer Simon wrote.

Simon stated that defendant told her that he was high after smoking crack all night. He went to Ms. Perkins house at about 10:00 a.m. to ask for money for crack. When Mrs. Perkins said she had no money, he "lost it", choking her until she passed out. After trying to wake her up, he cut her throat to make it look like someone broke in and killed her. He put the knife in the sink, went through her purse, took $5.00 and the cellular phone and left. (T II, 6-7, 25, 40).

The prosecution asserted that the Defendant came into the police sights after the police contacted the phone company and learned that Mr. Raymond Knott had been called on the cell phone 3 days after the death of Mrs. Perkins. Police then contacted Mr. Knott who identified the caller as defendant. (T II, 142-155; T III, 44-55).

Lieutenant Billy Jackson testified that he has seen people do things when they were on crack cocaine that they might not normally do. (T III, 33).

Defendant's mother testified that she knew her son, the defendant used crack cocaine, however, because he never used it around her, she did not know how he acted when under it's influence. (T IV, 22-23). She also stated that defendant did

not live at home because of crack as all her kids lived at home. The crack bothered her because defendant spent alot of money on it. (T IV, 47). There are many instances where drug usage was highlighted by the prosecution (T IV, 64-65, 87-88).

It is clear that highlighting Defendant's drug usage was part of the prosecutor's strategy. The prosecution wanted to hammer in to the jury that defendant was a bad person because he was a drug user, and therefore the defendant's drug use suggests that the defendant committed this crime.

The admissibility of evidence of a defendant's prior crimes or bad acts is governed by MRE 404(b) and People v. VanderVliet, 444 Mich 52; 508 NW2d 114 (1993). MRE 404(b) states:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." Id.

Evidence of other crimes is admissible to prove a propensity to commit such acts. MRE 404(b); People v. Engleman, 434 Mich 204, 211; 453 NW2d 656 (1990). "This rule of law guards against convicting an accused person because he is a bad man." People v. Robinson, 417 Mich 661, 665 (1983). Evidence of other crimes or bad acts creates the danger that the jury will find the commission of the charged crime more likely because the defendant has a propensity to commit such crimes.

In People v. VanderVliet, 444 Mich 52 (1993), the Michigan Supreme Court directed the bench and bar to employ the following standards in assessing the admissibility of evidence of other crimes, wrongs, or acts: (1) The evidence must

be offered for a purpose other than to show the defendant's propensity to commit a crime; (2) the evidence must be relevant under MRE 402 to an issue or fact of consequence at trial; (3) the trial court should determine under MRE 403 whether the danger of undue prejudice substantially outweighs the probative value of the evidence, in view of the availability of other means of proof and other facts appropiate for making a decision of this kind. Id. at 74-75.

Although arguably relevant and probative, testimony about drug usage is held to be prejudicial. In People v. Williams, 63 Mich App 389 (1975), the Court reversed a conviction for larceny because evidence of the Defendant's drug use was admitted. The Court found that the evidence was more prejudicial that probative. Similiarly, in People v. White, 39 Mich App 651 (1972), the Court held that references to drugs in the prosecutor's case were highly prejudicial.

In People v. James Robinson, 417 Mich 661 (1983), the Court reversed a conviction where relevant evidence of prior bad acts of the accused were introduced into evidence, because they were more prejudicial than probative. The Court, quoting from People v. DerMartzex, said that "whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence." The prosecutor detailed the usage of cocaine by the defendant, and repeatedly referenced it, in his opening (T I, 88, 89, 91, 93) and closing (T IV, 125, 126, 127-128, 129, 170, 174, 178, 179) statements. Detective Jackson even went so far as to elaborate on the things people do when they were on crack cocaine that they normally wouldn't do. (T III, 33). Clearly it was not the cocaine usage which was the subject of the instant charges. The characterizations in front of the jury was unfairly prejudicial, and performed for its prejudicial effect, and unnecessary, as it became a show for dramatic, and prejudicial effect.

Evidence of Defendant's cocaine usage was highly prejudicial. The trial court

...d to properly employ the third prong of the VanderVliet prior acts test: the balancing process under Rule 403. Thus this Court must make a "determination . . . whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropiate for making decisions of this kind under Rule 403." VanderVliet, 444 Mich at 75. Here the probative value of the prior acts evidence was far outweighed by the prejudicial effect. It is "simply incredible" to believe that the jury could have discounted this evidence when judging Defendant's guilt or innocence. The continual reference to the drug usage and its dramatization before the jury reinforced what the prosecutor hoped it would, that Defendant who was a "crack head" which are people that do things that they normally wouldn't do, committed the instant offense, thus the prosecutors actions made the trial fundamentally unfair and therefore denied due process. People v. Jones, 48 Mich App 334 (1974); People v. Morgan, 86 Mich App 226 (1979); People v. McKinney, 410 Mich 413 (1981). Defendant is entitled to a new trial.

**IV. THE POLICE LACKED PROBABLE CAUSE FOR DEFENDANT'S WARRANTLESS ARREST, CONSEQUENTLY, ANY EVIDENCE OBTAINED THEREFROM WAS UNLAWFULLY ADMITTED AGAINST HIM.**

The Fourth Amendment of the United States Constitution commands that no warrants for searches or arrests shall be issued except "upon probable cause . . ." US Const, Ams VI, XIV; Mich Const 1963, Art 1, § 11.

Defendant was arrested when the police arrived at the Sweet Water Tavern. Officer Visbara said that he, Officer Jackson and Officer Adams arrested Defendant at the tavern and took him to Detroit Homicide after obtaining Defendant's name as the caller on Ms. Perkins's (the deceased) phone to Raymond Knott. (T II, 166-169, 70-71, 174-176). They did so because they wanted the cell phone, and it was after defendant was arrested that defendant was asked to sign the consent to search form, so the police could investigate whether the phone was at Defendant's house. (T II, 170-171). Defendant was then turned over to Detective Simon, who said defendant was in custody in the interrogation room when she obtained a confession from him. (T I, 163-166; T II, 23). According to Visbara, Defendant was not even told the police wanted the cell phone when he was arrested at the Sweet Water Tavern, obviously for questioning. (T II, 178-180). It is clear from Visbara's testimony that Defendant was arrested for investigation, given that police did not even start to investigate what he might know or possess until they took him into custody. Defendant signed the consent form at 7:05 p.m.

Lieutenant Jackson corroborated Officer Visbara. He testified that police did not mention the cell phone at Sweet Water Tavern, as they only said they were there about the murder of Mrs. Perkins. It was not until defendant was taken to Homicide that police asked him for the consent to search and mentioned the phone. (T III, 22-25). Sergeant Cathy Adams said that the officers picked up

fendant at Sweet Water Tavern after they talked to Knott, told him about the matter involving Mrs. Perkins, but did not mention the cell phone. (T III, 49-50, 55-57). It was at headquarters, where she said that defendant was under arrest, that police asked for the consent to search for the cell phone, then interrogated him on the basis of the phone alone.

Defendant was already arrested at the Detroit Homicide and in custody while the officers searched his home with the consent form and returned with the phone and a shotgun. He was turned over to Simon and placed in the box for interrogation. It was then that Simon obtained his alleged confession, the only evidence against defendant at trial. (T III, 53).

Defendant said the officers did tell him they wanted to discuss the cell phone at the tavern, and that he went with them because he was not told he was under arrest. He believed he could go back to work, but that was not the case. He thought he was going to headquarters to give a witness statement, when in fact he was under arrest for investigation of the Perkins murder. (T IV, 59-61, 61-62, and compare, T IV, at 61-62). There, defendant was asked to sign the consent form, which he did, still not thinking he was under arrest, then he was locked in the box, and officers took turns questioning him until Simon got his signature on her statement sometime after 9:00 p.m. (T I, 165-166). By the time defendant signed what Simon wrote, he just wanted to go home. However, that did not happen. (T IV, 76-78, 110-111, 120, 122-123). Defendant had been arrested at Sweet Water Tavern for investigation, thinking he was a witness who would be questioned and free to leave. In truth, he was not free to leave, and the police investigated what if any role defendant may have had in the crime while he was in custody.

Under either Defendant or the police's rendition of when defendant was told that he would be questioned about the cell phone, it is clear that defendant was arrested at the tavern for investigation. Police had Defendant's full name and

address and defendant was not hiding anything from the police, nor on the run, so they had no need to arrest defendant without a warrant to obtain evidence.

In Beck v. Ohio, 379 US 89; 85 S Ct 223; 13 L Ed 2d 142 (1964), the Supreme Court established the standard for evaluating the constitutional validity of an arrest:

> "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." 379 US 89, 96.

Michigan law mirrors the federal constitutional standard. A police officer can arrest without a warrant "when he has reasonable cause to believe that such a person committedit." MCL 764.15(d); MSA 28.874. In People v. Oliver, 417 Mich 336, 374 (1983), the Michigan Supreme Court articulated the standard for the requisite probable cause to arrest:

> "The first rule in determining whether an officer had probable cause to make an arrest is whether there are any facts which would lead a reasonable person to believe that the suspected person has committed a felony. E.g., People v. Ward, 226 Mich 45; 196 NW 971 (1924). Secondly, a police officer's belief that a defendant committed a felony must be based on facts which are present at the moment of the arrest. E.g., People v. Stweart, 232 Mich 670; 206 NW 337 (1925)."

Facts which constitute mere suspicion, inarticulate hunches, and vague beliefs of criminal involvement do not amount to probable cause. Henry v. United States, 361 US 98; 80 S Ct 168; 4 L Ed 2d 134 (1959); Wong Sun v. United States, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963); People v. Griffin, 44 Mich App 474; lv den, 385 Mich 775 (1971).

It is well settled that "[W]here there is no probable cause to arrest, but police take a defendant into custody for investigating purposes, any evidence obtained as a result of the unlawful detention or any statement made while unlawfully detained must be suppressed. People v. Irby, 129 Mich App 306, 314

(1983)." People v. Lewis, 160 Mich App 20, 25 (1987). In Taylor v. Alabama, 457 US 687, 689-690; 102 S Ct 2664; 73 L Ed 2d 314 (1982), the United States Supreme Court outlined the relevant rule:

> "In Brown v. Illinois, [422 US 590; 95 S Ct 2254; 45 L Ed 2d 416 (1975)] supra, the police arrested suspects without probable cause. The suspects were transported to police headquarters, advised of their Miranda rights and interrogated. They confessed within two hours of their arrest. This Court held that the confession were not admissible at trial, reasoning that a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the casual connection between the illegal arrest and the confession so that the confession is 'sufficiently an act of free will to purge the primary taint.' Brown v. Illinois, supra, at 602 [quoting Wong Sun v. United States, 371 US 471, 486, 9 L Ed 2d 441, 83 S Ct 407 (1963)]. See also Dunaway v. New York, supra, at 217. This Court identified several factors that should be considered in determining whether a confession has been purged of the taint of the illegal arrest: '[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct.' Brown v. Illinois, supra, at 603-604 (citations and footnotes omitted); Dunaway v. New York, 442 US, at 218. The State bears the burden of proving that a confession is admissible. Ibid."

Michigan appellate courts have consistently followed the principles announced in Brown and Dunaway. People v. Casey, 411 Mich 179 (1981); People v. Summers, 407 Mich 432 (1979), rev'd on other grounds sub nom Michigan v. Summers, 452 US 692 (1981); People v. Mosley (After Remand), 400 Mich 181 cert den 434 US 861 (1977); People v. Davenport, 99 Mich App 687 (1980); People v. Martin, 94 Mich App 649 (1980).

That Defendant was "arrested" when the officers took him into custody is beyond dispute. The arresting officers in this case was a member of the Homicide Division. There was no independent judgment as to whether to arrest defendant, so there was no determination as to whether the defendant had committed the murder,

(i.e., whether there was probable cause for the arrest).

The facts provided by the officers do not amount to probable cause. Defendant was locked up and held for investigation. The Supreme Court in Dunaway, supra, at 212-213, and in Brown, supra, at 605 have condemned arrests for questioning or investigation. In Brown, the Court stated:

> "The impropriety of the arrest was obvious; awareness of the fact was virtually conceded by the two detectives when they repeatedly acknowledged, in their testimony, that the purpose of their action was 'for investigation' or for 'questioning.' . . . The arrest, both in design and in execution, was investigatory. The detective embarked upon this expedition for evidence in the hope that something might turn up." 422 US at 605.

Since Defendant was arrested in violation of his constitutional right to be free from unreasonable seizure without probable cause, the evidence obtained by the police should not have been admitted at trial unless purged of the taint of the illegal arrest. See Wong Sun v. United States, supra. Brown v. Illinois, supra, made it clear that Miranda warnings were designed as a 5th Amendment protection and cannot cure an illegal arrest. The Court in Brown at 602 stated:

> "If Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted . . . Arrests made without warrant or without probable cause, for questioning or 'investigation' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving Miranda warning."

In Taylor v. Alabama, supra, at 691, the Court noted that three different sets of Miranda warnings were insufficient to break the casual chain.

Voluntariness is also irrelevant. "Indeed, if the Fifth Amendment has been violated, the Fourth Amendment issue would not have to be reached." Brown, supra, at 604. The Court in Dunaway, supra, at 217-218 stated:

Brown articulated a test designed to vindicate the 'distinct policies and interests of the Fourth Amendment.' Id., at 603. Following Wong Sun, the Court eschewed any per se or 'but for' rule, and identified the relevant inquiry as 'whether Brown's statements were obtained by exploitation of the illegality of his arrest,' 422 US at 600; See Wong Sun v. United States, supra, at 488. Brown's focus on the 'casual connection between the illegality and the confession, 422 Us at 603, reflected the two policies behind the use of the exclusionary rule to effectuate the Fourth Amendment. Where there is a close casual connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similiar police misconduct in the future, but use of the evidence is more likely to compromise the integrity of the courts."

In Taylor v. Alabama, the Supreme Court refused to find that the six hour period between the arrest and the statement was a break in the casual chain: "[A] difference of a few hours is not significant where, as here, petitioner was in police custody,unrepresented by counsel and he was questioned on several occasions, fingerprinted, and subject to a lineup." Id., 457 US at 691.

Likewise, in the instant case, the taint was not purged. While there was not an extremely short interval between the time of the warrantless arrest and Defendant's statements, there were no intervening circumstances that purged the taint of the illegal arrest.

As the taint of Defendant's illegal arrest was not purged, admission of Defendant's post arrest statements are reversible error, and Defendant, after having an evidentiary hearing pursuant to People v. Walker (On Rehearing), 374 Mich 331, 338 (1965), to determine if the evidence should have been surpressed, and thereafter defendant should be entitled to a new trial.

V. DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION IN THE FOLLOWING WAYS:

The Sixth Amendment provides that in all criminal prosecutions "the accused shall enjoy the right to . . . have the assistance of counsel for his defense." Strickland v. Washington, 466 US 668 (1984); United States v. Cronic, 466 US 648 (1984); People v. Pickens, 446 Mich 298 (1994); US Const Ams VI, XIV; Mich Const 1963, art 1, § 20.

Defendant must identify the specific acts or omissions of counsel which defendant alleges were not the result of "reasonable professional judgment." Strickland 105 S Ct at 2066. Defendant must also show that counsel's performance was "deficient." To establish this, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id at 2064. The defendant must also show that counsel's deficient performance prejudiced the defense. People v. Lavearn, 201 Mich App 679 (1993). Prejudice will be found where the defendant shows that "there is a reasonable probability that absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id at 2068-2069.

The Strickland Court adopted the American Bar Association guidelines as appropriate to determine whether defense counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law. See ABA Standard 4-3.6; Michigan Rules of Professional Conduct, 1.1.

A. Trial Counsel Was Ineffective In Failing To Request That The Trial Court Instruct That The Killing And Larceny Were Unrelated.

The instant case did not go to the jury in a logical and coherent form because of counsel's instruction related error. Counsel failed to request an

instruction that if the killing and larceny were unrelated then Defendant was only guilty of second degree murder (See facts in Issue I, supra, herein incorporated). People v. Bennie Thomas, 406 Mich 971 (1979); People v. Hunter, 209 Mich App 280 (1995)(defendant's murder and subsequent sexual penetration of the victim did not constitute felony murder because the victim was dead and no longer a person who could refuse consent).

Counsel's mistake was such a serious mistake that defendant was denied a fair trial. People v. DeGraffenried, 19 Mich App 702 (1969). In People v. Stapf, 155 Mich App 491, 497-500 (1986), counsel argued that defendant was guilty of only assualt and battery, in a kidnapping case but failed to make a record request for an instruction on the lesser offense. On appeal that defendant claimed that counsel made a proper request for the instruction in chambers and off the record, and the Court remanded for a determination of who had erred, the Court or counsel. In the instant case counsel inadequately represented defendant and the trial court had an obligation to give the proper instruction even though they were not requested.

B. Trial Counsel Was Ineffective For Failing To Bring To The Court's Attention That Defendant's Conviction Must Be Reduced To Second Degree Murder Where The Subsequent Alleged Larceny Occurred From A Dead Body.

Counsel failed to request an directed verdict of aquittal or object that since the killing and larceny were unrelated then defendant was only guilty of second degree murder (See facts from Issue II, supra, herein incorporated).

Counsel failed to argue that defendant could not commit a larceny from a dead body or argue this theory which was consistent with the prosecution's presentation of it's case. People v. Bennie Thomas, 406 Mich 971 (1979); People v. Hunter, 209 Mich App 280 (1995)(defendant's murder and subsequent sexual

penetration of the victim did not constitute felony murder because the victim was dead and no longer a person who could refuse consent).

Counsel's mistake was such a serious mistake that defendant was denied a fair trial. People v. DeGraffenried, 19 Mich App 702 (1969); People v. Pickens, 446 Mich 298 (1994); Beasley v. United States, 491, F.2d 687 (CA 6, 1974). Had counsel argued that defendant was guilty of only second degree murder, coupled with this being Defendant's first felony conviction, defendant could have very possibly received a indeterminate sentence as oppossed to the present life sentence. Counsel's failure to make an obvious argument on Defendant's behalf constitutes ineffective assistance of counsel in this case. Quartararo v. Fogg, 679 F. Supp. 212, 244-247 (ED NY, 1988), Aff'd 849 F.2d 1467 (CA 2, 1988).

C. Trial Counsel Was Ineffective In Failing To Object When Defendant Was Denied His Due Process Right To A Fair Trial Where The Prosecutor Presented 404(B) Evidence That Was Unfairly Prejudicial.

Trial counsel was also ineffective for failing to object to improper prosecutorial argument that defendant was a serious crack cocaine drug addict who was unpredictable (T IV, 177-178)(See also Issue III, herein incorporated). Such an argument is improper. As was the case, a defendant's drug use is an extremely inflammatory subject. There was testimony that defendant was so addicted to crack cocaine that he was unable to function without it, or that he would steal or rob to get it. That being said, the prosecutor's references to Defendant's drug problem in closing should have been objected too, because they deprived defendant of a fair trial. People v. Margaret Jones, 48 Mich App 334 (1973); People v. Morgan, 86 Mich App 226 (1978); People v. Walker, 86 Mich App 155 (1978); People v. McKinney, 410 Mich 413 (1981). The argument of the prosecution was not based upon evidence, and was directed at disparaging the defendant's credibility to distract the jurors

from their duty as triers of fact, and inflame their passion to convict where the case was factually lacking. People v. Tommolino, 187 Mich App 14 (1991).

D. Trial Counsel Was Ineffective For Failing To Move For The Suppression Of The Consent To Search, Statement's At Police Headquarters Where The Police Lacked Probable Cause For The Defendant's Warrantless Arrest.

Defense counsel failed to provide defendant with the effective assistance of counsel when trial counsel failed to seek suppression of Defendant's alleged statement and consent to search, when both were fruits of defendant's illegal arrest for investigatory purposes.

Trial counsel did not object to admission of the statement Barbara Simon offered at preliminary examination or trial. Nor did counsel object to the search pursuant to the consent Defendant signed after Visbara came to him with it when defendant was already in custody. Simon took Defendant's statement while defendant sat in a locked interrogation room at Detroit Police Headquarters, after he had been therea few hours. All the police officers went to Sweet Water Tavern to talk to Defendant, before they had even confirmed that he truely had the phone, and officers testified that defendant was under arrest when they took him to the police station. (T I, 161-162, 163-165; T II, 170-171; T III, 49-50, 55-57). Defendant on the other hand, thought he was going with police to answer questions for them. (T IV, 59-61).

There was no doubt that police took defendant into custody while using defendant for investigatory purposes, as there was no probable cause to arrest. People v. Champion, 452 Mich 92, 115 (1996); People v. Russo, 439 Mich 584, 603-604 (1992). While State and Federal Courts have condemned warrantless arrest made without probable cause that are for investigatory purposes. People v. Boyd, 416 Mich 538 (1982); Hayes v. Florida, 470 US 811 (1985). Here the

Detroit Police worked on defendant like the pit-crew in the Daytona 500 car race.

Here, no intervening circumstances developed probable cause sufficient to purge the initial taint. Defendant was in custody when he signed the Consent to Search form brought by Visbara, who incredibly denied even talking to defendant. (T II, 174-176; T III, 12-13, 15-16, 24-25). Defendant was in custody for two hours before the interrogation took place. No new evidence that had not been supplied to the police before the arrest was developed that would establish probable cause to believe the defendant killed Ms. Perkins. Before the interrogation the police suspected (as Knott and Defendant told them), and then found out that defendant had the decedent's cell phone. Defendant told them as much at the outset and Knott told them as much when he reported the call. However, they placed defendant in custody before obtaining the Consent to Search from him. By the time Simon spoke to Defendant, nothing more than Defendant's possession of the cell phone was known. This was insufficient evidence without more to justify a rational person in believing that Defendant was the killer.

Defendant asked trial counsel to hold a <u>Walker</u> hearing to support his statement to Simon on the ground that it was involuntary because it was induced by false promises on the part of the police, and by Defendant's fear and ignorance of the consequences. (Appendices D and F). Trial counsel failed to request a pretrial hearing under <u>People</u> v. <u>Walker</u>, 374 Mich 331, 338 (1965), so that the trial court could determine whether Defendant's confession was sufficiently voluntary to be admitted. <u>Mincey</u> v. <u>Arizona</u>, 437 US 385; 98 SC t 2407; 57 L Ed 2d 290 (1978).

Counsel may certainly be ineffective where he fails to move for a hearing on the voluntariness of a Defendant's confession, and where counsel's inaction

was, as in this case, decisive of the outcome of the trial, defendant was deprived of a reasonably likely chance of aquittal. People v. Means (On Rem), 97 Mich App 641 (1980); People v. Davis, supra, 102 Mich App at 403.

VI. **DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL DURING HIS CONSTITUTIONALLY PROTECTED STATE APPEAL OF RIGHT IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

Both the Sixth and Fourteenth Amendments to the United States Constitution, and their Michigan counterparts, Mich Const 1963, Art 1, § 20, was abridged not only during the trial, but during the entire appellate process. The due process provisions of the Fourteenth Amendment entitle a criminal defendant to the effective assistance of counsel in his first appeal as of right. Evitts v. Lucey, 469 US 387 (1985). The issue of ineffective assistance of appellate counsel is exacerbated in that any claim which could have been, but which was not, raised in the defendant's initial appeal of right is waived for purposes of any subsequent appeal, unless the failure to raise the claim in the appeal of right has resulted from ineffective assistance of original appellate counsel. People v. Wolfe, 156 Mich App 225 (1986).

Also it should be noted that in Jones v. Barnes, 103 S Ct 3308 (1983), the United States Supreme Court held that counsel has no constitutional duty to raise all nonfrivolous issues requested by the defendant. Justice Blackmun concurring insisted however, that counsel's failure to raise a requested nonfrivolousissue on appeal constitutes "cause and prejudice" permitting later habeas consideration of that claim. Jones v. Barnes, supra 103 S Ct at 3314. The emphasized requisite is met in this case.

The standard for determining whether effective assistance of counsel has been provided in an appeal is measured along the same standards used in determining whether a defendant has received effective assistance of counsel at trial. People v. Johnson, 144 Mich App 125 (1985); People v. Reed, 198 Mich App 639, 646 (1993); People v. Hurst, 204 Mich App 634, 641 (1994); Brown v. Foltz, 763 F.2d 191, 195 (6th Cir. 1985)(Coutie, J., dissenting); Gray v. Greer, 778 F.2d 350 (7th

...r. 1985). With reference to that standard, the constitutional right to the effective assistance of counsel entitles a criminal defendant to the effective assistance of counsel at all critical stages during the criminal process. Powell v. Alabama, 287 US 45 (1932); Glasser v. United States, 315 US 60 (1942). A criminal appeal is a critical stage. Evitts, supra.

In order to show that the defendant has been denied the effective assistance of counsel, the defendant must demonstrate that, considering all the circumstances, his counsel Sarah E. Hunter and Jacqueline McCann of the State Appellate Defender Office performance fell below the objective standard of reasonableness, so prejudicing the defendant that he was denied a fair trial (here, appeal), and that a reasonable probability exists that, but for counsel's conduct, the result of the proceeding would have been different. Strickland v. Washington, 466 US 668 (1984) adopted in People v. Pickens, 446 Mich 298 (1994).

In order for defendant's appellate counsel to make a proper evaluation of the appeal and thereby properly advise the defendant is that "the appellate lawyer must master the record, thoroughly research the law and exercise judgment in identifying the argument that may be advanced on appeal." McCoy v. Court of Appeals Wisconsin, 486US 429, 438 (1988). Basic investigation is a prerequisite to the exercising of sound trial strategy. Where such investigation is not done, courts have declined to grant counsel's decision the high measure of deference ordinarily afforded to appellate counsel. United States v. Barbour, 259 US App DC 111; 813 F.2d 1232, 1234 (1987)("Only when reasonable investigation has been performed is counsel in a position to make informed tactical decisions. It is especially important counsel adequately investigate the case in order that at the very least he can provide minimally competent professional representation."); Neally v. Cabana, 764 F.2d 1173, 1178 (CA 5, 1985); House v. Balkcom, 725 F.2d

, 617-618 (CA 11, 1984); Crisp v. Ducksworth, 743 F.2d 580, 583 (CA 7, 1983).

The burden of proof in a claim involving ineffective assistance of counsel lies with the defendant making the claim, and thus defendant silmutaneously files a motion for an evidentiary hearing to make a record. People v. Ginther, 390 Mich 436 (1973); People v. Tranchida, 131 Mich App 446 (1984).

Defendant submits that appellate counsel was ineffective for failing to raise issues one through five, which undermined the defendant's opportunity for success on appeal, as counsel's conduct so undermined the proper functioning of the adversarial process that the appeal cannot be relied on as having a just result. Strickland v. Washington, supra, 466 US at 686; 104 S Ct at 2064.

VII. DEFENDANT HAS SHOWN "GOOD CAUSE" AND "ACTUAL PREJUDICE" AND IS ENTITLED TO HAVE THIS COURT REACH THE MERITS OF THESE CLAIMS.

Pursuant to Michigan's postconviction proceedings entitled Motion For Relief From Judgment, before a court can make a decision on whether to grant relief from the judgment, it must first decide whether defendant has met the "good cause" and "actual prejudice" test of MCR 6.508(D)(3)(a) and (b). People v. Reed, 449 Mich 375 (1995); Wainwright v. Sykes, 433 US 72 (1977); United States v. Frady, 546 US 152 (1982).

This Court may also waive the good cause requirement, but not the actual prejudice requirement if there is a significant possibility that the defendant is innocent of the crime. People v. Watroba, 193 Mich App 124 (1992); Murray v. Carrier, 477 US 478, 496 (1986).

Defendant submits that in the issues raised, trial counsel was ineffective and appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness. People v. Reed, supra. Defendant also submits that he is actually innocent. Schlup v. Delo, 513 US 298, 321 (1995); People v. Watroba, and Murray v. Carrier, supras'.

**REQUESTED RELIEF**

**WHEREFORE** Defendant George Calicut Jr., respectfully moves this Honorable Court to conduct whatever procedures it deems necessary and thereafter grant defendant relief from this Judgment.

Respectfully submitted

Dated: 3-12-04

Mr. George Calicut Jr. # 298836
Defendant in Propria Persona
Thumbs Correctional Facility
3225 John Conley Drive
Lapeer, Michigan 48446

APPENDIX-A

MICHIGAN COURT OF APPEALS ORDER DENYING MOTION TO REMAND DATED 11/6/2000

17014 T
SEH

# Court of Appeals, State of Michigan

## ORDER

People of MI v George Calicut Jr

Docket No. 224817

LC No. 99-003147

Harold Hood
Presiding Judge

Roman S. Gribbs

Kurtis T. Wilder
Judges

---

The Court orders that the motion to remand is DENIED for failure to persuade the Court of the necessity of a remand at this time.

RECEIVED
NOV 07 2000
APPELLATE DEFENDER OFFICE

Harold Hood
Presiding Judge

A true copy entered and certified by Carl L. Gromek, Chief Clerk, on

NOV 06 2000
Date

Chief Clerk

APPENDIX-B

MICHIGAN COURT OF APPEALS ORDER AFFIRMING CONVICTION DATED 12/7/2001

RECEIVED
DEC 1 0 2001
APPELLATE DEFENDER OFFICE

17014 T
JJM
DEFENDANTS COPY

STATE OF MICHIGAN

COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GEORGE CALICUT, JR.,

Defendant-Appellant.

UNPUBLISHED
December 7, 2001

No. 224817
Wayne Circuit Court
Criminal Division
LC No. 99-003147

---

Before: Zahra, P.J., and Smolenski and Talbot, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree felony murder, MCL 750.316, and was sentenced to life imprisonment. He appeals as of right. We affirm.

Defendant's conviction arises from the strangling and stabbing death of a woman who was a friend of defendant's family. The incident occurred at the home of the decedent. The police traced defendant through his use of a cellular telephone that belonged to the decedent and had been reported missing by her husband after the decedent was killed. Defendant admitted to the police that he had the telephone and gave a statement confessing to the crime.

Defendant argues that the evidence adduced at trial was insufficient to support his conviction because there was no evidence that he killed the decedent in connection with a larceny. In reviewing whether the prosecution presented sufficient evidence to support a conviction, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the elements of the offense were proved beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). The elements of felony murder are: (1) the killing of a human being, (2) with malice, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b), of which larceny is one. *People v Watkins*, 247 Mich App 14, 32; 634 NW2d 370 (2001); 750.316(1)(b). "The facts and circumstances of the killing may give rise to an inference of malice." *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999).

Although he later denied the killing, in his statement to police defendant confessed to becoming angry when the decedent said that she had no money to lend him. Defendant admitted that he was high because he had been smoking crack cocaine. Defendant confessed to choking and stabbing the decedent, and confessed to subsequently taking $5.00 and a cellular telephone.

prejudiced the defense and deprived defendant of a fair trial, nor are we persuaded of the need to remand this matter to the trial court for an evidentiary hearing.

    Affirmed.

/s/ Brian K. Zahra
/s/ Michael R. Smolenski
/s/ Michael J. Talbot

APPENDIX-C

MICHIGAN SUPREME COURT ORDER DENYING LEAVE TO APPEAL DATED 7/29/2002

17014 L
JJM

# Order

Entered: July 29, 2002

Michigan Supreme Court
Lansing, Michigan

Maura D. Corrigan,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman,
Justices

120916

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GEORGE CALICUT,

Defendant-Appellant.

SC: 120916
COA: 224817
Wayne CC: 99-003147

On order of the Court, the delayed application for leave to appeal from the December 7, 2001 decision of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

Bdm:0723

I, CORBIN R. DAVIS, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 29, 2002 Corbin R. Davis

APPENDIX-D

AFFIDAVIT OF SARAH E. HUNTER

STATE OF MICHIGAN

IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

Plaintiff-Appellee,

-vs-

**GEORGE CALICUT, JR.**

Defendant-Appellant.
______________________________/

**Court of Appeals No.** 224817

**Lower Court No.** 99-3147-FC

# AFFIDAVIT OF SARAH E. HUNTER

STATE OF MICHIGAN )
) ss.
COUNTY OF WAYNE )

**SARAH E. HUNTER**, being first sworn, says that she has read the foregoing motion and the facts and allegations therein are true to the best of her knowledge and belief. Further, she states:

1. On August27, 28 and 29, 1999, I spoke on the phone to Defendant-Appellant's mother, Mrs. Forestine Calicut. On August 30, 2000, I spoke to Defendant-Appellant, George Calicut, Jr. in person at Saginaw Correctional Facility after speaking to him several times about his appeal on the telephone.

2. Mrs. Calicut was unable to come to my office to speak to me because of a broken bone in her foot that was not healing well. However, she and I discussed her son, George Calicut Jr.'s case and what she believed could have been done that was not done.

3. Mrs. Calicut said to me that the young man who drove George Calicut, Jr. to work on the day of the killing, Eric Horton, lived near to the Calicut family and was available as a witness and willing to testify. She did not know why he was not called. However, Horton told her that recalled driving Mr. Calicut to work on the day of the killing and also remembered Mr. Calicut showing him the cellular phone at work the day he took it from Lemuel Perkins, Jr.'s truck or shortly thereafter.

4. Mrs. Calicut also arranged for someone from trial counsel's office to drop off the discovery materials for me. I received them but do not know who dropped them off. Mrs.Calicut and George Calicut, Jr. and I went over these materials together, and they pointed out some things that they considered important and that could have made a significant difference at trial. Mr.

Calicut told me that his trial counsel never showed him the discovery packet before his trial or during trial. He first saw it when I brought it to him.

5. For example, Mrs. Calicut said the "numbers man" who was seen at Mrs. Perkins house just after 11 a.m. by a neighbor, was located and interviewed by police. The police report is in file and attached to this affidavit.

6. The numbers man was located and interviewed by police. His name is Mr. Eddie Johnson, and went to Virgie Perkins's house at about 11:50 on 3-10-99. When there was no answer a girl came out of the house a few doors down, and said her mother wanted to talk to him. He walked over there, and a bunch of people were in the house. She told Mr. Johnson that they found Mrs. Perkins dead in the house and her throat was cut. Mr. Johnson was not produced by either side at trial, but he obviously talked to some people living down the street who knew earlier in the day, around 11:00 a.m. that Mrs. Perkins throat had been cut because they had been in the house, and did not call the police. Mr. Calicut told me that if his counsel had shown him the discovery packet he would have insisted on the numbers man being called as a witness because he knew that these neighbors somehow knew of the death but never called police. (See Attached).

7. Also in the police report is a statement by Brandy McCaskell, who said that Cynthia Dennis and Mrs. Perkins argued all the time during the summer. Brandy said Ms. Dennis said that she could not tell how to kill someone but she could tell them how to rob them. Ms. Dennis told Mrs. Perkins all the time that she was from the old school and that she'd cut her neck. "That's all she used to say". (Appendix ). Brandy McCaskell was not called at trial.

8. The police reports show that there were numerous other promising suspects who were not seriously investigated. (Appendix ).

9. SCS was apparently sent to Hartford Street to pick up all the residents there to find out why Mr. Eddie was told by the residents there that the complainant was dead before police were called there. "Greg" was a drug dealer out of that house according to Cynthia Dennis. The defense had no discovery or information about whether these people were brought in or confronted with this fact. No one testified about it at trial. (Appendix ).

10. When I spoke to Mr. Calicut at Saginaw Correctional Facility on August 30, 2000, he told me that several witnesses from Sweet Water Tavern were willing to and could have testified that he was a hard worker who was at work every day until the day he was picked up by police on March 16th , and that his manager had been told police were taking him for questioning and he would return to work. Shirley, his manager, even called his house to find out why he did not return after going with police on the 16th of March. One person, Jeff Cain, Mr. Calicut's boss at Sweet Water, was at trial, but was not called as a witness. Other employees, such as Bill, a waiter, and Mark, who did dishes, could have testified to his character and they could have established that he was not so addicted to crack cocaine that he could not function or regularly go to work, as he testified. Shirley, the manager at night, could have testified that Mr. Calicut regularly closed the restaurant with her, and that she trusted him. Also, they could have testified that if he wanted to rob for money, there was a lot of money at the restaurant he could have tried to take. However, his

attorney did not call those witnesses, and said they were not important or that they would not make a difference.

11. Mrs. Forestine Calicut told me on the telephone that she was also aware that a neighbor, Cynthia Boone, could have testified that Junior Perkins was at her house on Monday the 8th of March, 1999 with his big truck, and that he was in town then.

12. Mr. Calicut also told me that Thaddeus Dean, his attorney, came to see him only once at jail early in the case, that he never showed him the discovery packet, and that he never called the witnesses from Sweet Water Tavern that Mr. Calicut told him about. Mr. Calicut also gave Mr. Dean notes in court about his case that he thought were important, but these facts were not all brought out at trial. Mr. Calicut also found out he should ask for a Walker hearing from other inmates in jail, but his attorney declined to do this, saying he did not want to tip his hand and show his strategy to the prosecution.

13. I tried numerous times to call attorney Thaddeus Dean to interview him for this motion to remand, and I paged him and wrote to him, but he did not return my calls and I was unable to speak to him by the time this matter was due in the Court of Appeals.

14. I also took a handwritten affidavit from Mr. Calicut at his correctional facility on August 30, 2000 that is attached hereto, and he will forward a typed copy of that affidavit forthwith.

[signature]
**SARAH E. HUNTER**

Dated: August 31, 2000

Subscribed and sworn to before me
August 31, 2000.
Jeanne M. Mautz
NOTARY PUBLIC, Wayne County, Michigan
My commission expires: 9-2-00

FILED 2000 AUG 25 P 3:17

APPENDIX-E

AFFIDAVIT OF GEROGE CALICUT JR.

**STATE OF MICHIGAN**

**IN THE COURT OF APPEALS**

**PEOPLE OF THE STATE OF MICHIGAN**

Plaintiff-Appellee,

**Court of Appeals No.** 224817

**Lower Court No.** 99-3147-FC

-vs-

**GEORGE CALICUT, JR.**

Defendant-Appellant.

_______________________________/

**AFFIDAVIT OF GEORGE CALICUT JR.**

STATE OF MICHIGAN )
) ss.
COUNTY OF SAGINAW )

**GEORGE CALICUT JR.,** being first sworn, says that she has read the foregoing motion and the facts and allegations therein are true to the best of her knowledge and belief. Further, she states:

1. The notes attached to this affidavit I wrote to my attorney during trial because he only came to see me one time.

2. My attorney did not show me the discovery packet.

3. I asked my attorney for a Walker hearing but he told me it would "tip his hand" as to his strategy.

4. I asked my attorney to call witnesses from Sweet Water Tavern, but he said we did not need them. My managers Darryl Powell and Shirley, Bill and Mark and Eric Horton could have said I was at work every day, not strung out on drugs. I worked 2 weeks straight before I was arrested. Shirley was told that police would bring me back after my arrest.

5. I did not know at trial that the numbers man was told at 11:50 a.m. that Mrs. Perkins was already dead. I would have wanted him called as a witness.

6. I wanted my lawyer to move for directed verdict but he said it was not worth it. (See Attached).

7. I did not know from talking to Ms. Simon that the investigators could not charge me with a crime and only prosecutors could.

8. At recess at trial, the prosecutor and my attorney spoke to Lemuel Perkins, Jr. who said I was with him on Monday the 8th of March, and on Tuesday the 11th, Friday the 12th, Saturday the 13th, but he also said he did not have the phone. The prosecutor did not call him, and Mr. Dean did not call him, but I wanted him called.

/s/
**GEORGE CALICUT, JR.**

Dated: August 30, 2000

Subscribed and sworn to before me
August 30, 2000.
/s/
NOTARY PUBLIC, Saginaw County, Michigan
My commission expires:__________

STATE OF MICHIGAN

IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

Plaintiff-Appellee,

**Court of Appeals No.** 224817

**Lower Court No.** 99-3147-FC

-vs-

**GEORGE CALICUT, JR.**

Defendant-Appellant.

______________________________/

## AFFIDAVIT OF GEORGE CALICUT, JR.

STATE OF MICHIGAN )
) ss.
COUNTY OF Saginaw )

**GEORGE CALICUT, JR.**, being first sworn, says:

1. The notes attached to this Affidavit I wrote to my attorney during trial because he only came to see me one time.

2. My attorney did not show me the discovery packet.

3. I asked my attorney for a Walker hearing but he told me it would "tip his hand" as to his strategy.

4. I asked my attorney to call witnesses from Sweet Water Tavern, but he said we did not need them. My managers Darryl Powell and Shirley, Bill and Mark and Eric Horton could have said I was at work every day, not strung out on drugs. I worked 2 weeks straight before I was arrested. Shirley was told that police would bring me back after my arrest.

5. I did not know at trial that the numbers man was told at 11:50 that Mrs. Perkins was already dead. I would have wanted him called as a witness

[signature]
**GEORGE CALICUT, JR.**

Dated: August, 30 2000

Subscribed and sworn to before me
August 30 2000.

[signature: Gregory A. Brady]
NOTARY PUBLIC, ________, Michigan
My commission expires:__________

6. I wanted my lawyer to move for directed verdict but he said it was not worth it.

GREGORY A. BRADY
NOTARY PUBLIC MIDLAND CO., MI
MY COMMISSION EXPIRES [illegible]

7. I did not know from Ms. Simon that the investigators

STATE OF MICHIGAN

IN THE COURT OF APPEALS

**PEOPLE OF THE STATE OF MICHIGAN**

Plaintiff-Appellee,

**Court of Appeals No.** 224817

**Lower Court No.** 99-3147-FC

-vs-

**GEORGE CALICUT, JR.**

Defendant-Appellant.

______________________________/

**AFFIDAVIT OF GEORGE CALICUT, JR.** (Page Two

STATE OF MICHIGAN )
) ss.
COUNTY OF __________)

**GEORGE CALICUT, JR.**, being first sworn, says:

1. At recess, at trial, the prosecutor and my attorney spoke to Lemuel Perkins, Jr. who said I was with him on Monday the 8th of March, Thursday the 11th, Friday the 12th, Saturday and that he did not have the phone. The prosecutor did not call him and Mr. Dean did not call him, but I wanted him called.

2.

3.

4.

5.

6.

7.

George Calicut Jr.
GEORGE CALICUT, JR.

Dated: August, 30 2000

Subscribed and sworn to before me
August , 2000.

______________________________
NOTARY PUBLIC, ________, Michigan
My commission expires:__________

APPENDIX-F

OPINION AND ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT

RECEIVED
2004 MAR 25 P 3 17

STATE OF MICHIGAN
THIRD CIRCUIT COURT
CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF MICHIGAN

Case No. 99-3147
Hon. Craig S. Strong

v

GEORGE CALICUT JR.,

Defendant,

_______________________________________/

**ORDER**

At a session of said court in the
Frank Murphy Hall of Justice on JAN 16 2004

PRESENT: HON. HON. CRAIG S. STRONG
CIRCUIT COURT JUDGE

For the reasons stated in the foregoing Opinion, **IT IS HEREBY ORDERED**

That Defendant's MOTION FOR RELIEF FROM JUDGMENT is hereby **DENIED**.

Dated: JAN 16 2004

Craig Strong
CIRCUIT COURT JUDGE

JAN 29 PM 2:49
LANSING OFFICE
SANDRA SCHULTZ MENGEL
CHIEF CLERK

STATE OF MICHIGAN
THIRD CIRCUIT COURT
CRIMINAL DIVISION

THE PEOPLE OF THE STATE OF MICHIGAN

Case No. 99-3147
Hon. Craig S. Strong

v

GEORGE CALICUT JR.,

Defendant,

______________________________/

**OPINION**

Defendant was convicted by a jury of first degree felony murder, MC L 750.316 on October 8, 1999. He was sentenced to life imprisonment on October 27, 1999. and appealed by right. The Michigan Court of Appeals affirmed on December 7, 2001. The Michigan Supreme Court denied leave to appeal on July 29, 2002. Defendant now seeks review by way of a Motion for Relief from Judgment pursuant to MCR 6.500 et seq.

Defendant raises the following issues: 1) failure of the trial court to *sua sponte* instruct that killing and larceny were unrelated, 2) failure of the trial court to *sua sponte* instruct regarding inability to commit larceny on a dead body, 3) admission of 404b evidence, 4) ineffective assistance of counsel with regard to the above issues and counsel's failure to move for suppression of the search and statement, 5) ineffective assistance of appellate counsel for failure to present these issues prior to the Motion for Relief from Judgment.

Entitlement to relief is barred when a Motion For Relief From Judgment alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding … unless the defendant establishes that a retroactive change in the law has

undermined the prior decision. MCR 6.508(D)(2). This Court finds that the issues of defendant's arrest and search, and those that question the sufficiency of the evidence (labeled 1) and 2) above) were presented in the appeal by right. The Court of Appeals found sufficient evidence for the charge of larceny and that the search and statement were lawfully obtained. Defendant proffers no argument that there has been a retroactive change in the law or that such a change has undermined that decision.

In order to advance an allegation in a subsequent motion that could have been raised on appeal, the defendant must demonstrate "good cause" for failure to raise the grounds on appeal and actual prejudice resulting from the alleged irregularities that support the claim for relief, pursuant to MCR 6.508(D)(3)(b). The cause and prejudice standards are based on precedent from the United States Supreme Court. Wainwright v Sykes, 433 US 72; 97 S Ct 2497; 53 Led 2d 594 (1977). Relief may not be granted if the defendant alleges grounds for relief, other than jurisdictional defects which could have been raised on appeal or in a prior motion under this subchapter, unless the defendant demonstrates: 1) good cause for failure to raise such grounds previously; and 2) actual prejudice from the alleged irregularities that support the claim. MCR 6.508(D)(3); People v Brown, 196 Mich App 153; 492 NW2d 770 (1992), People v Watroba, 193 Mich App 124; 483 NW2d 441 (1992).

Defendant has not shown "good cause" under MCR 6.508(D)(3) as to why the issues presented in the motion were not previously raised on appeal. Ineffective assistance of counsel does not satisfy the "good cause" requirement because it is established that counsel need not raise all possible claims of error. Jones v Barnes, 463 US 745; 103 S Ct 3308; 77 L Ed 2d (1983).

Arguments proffered by Defendant do not persuade this Court that the "good cause" requirement should be waived. Defendant has not shown evidence of "prejudice." He was afforded a fair trial before jury and full appeal. Application of the holding in Strickland v Washington, 466 US 668; 104 S Ct 2052; 80 LEd2d 647 (1984), to this matter demonstrates that defendant has not made the requisite showing of prejudice from appellate counsel's actions to cause this Court to conclude that but for the counsel's conduct, the outcome of Defendant's appeal would have been different.

Therefore, based on the foregoing statutes and case law, Defendant's MOTION FOR RELIEF FROM JUDGMENT is hereby **DENIED**.

Dated: JAN 1 6 2004

HON. CRAIG S. STRONG
**CIRCUIT COURT JUDGE**

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK
BY [signature]
DEPUTY CLERK

# MICHIGAN DEPARTMENT OF CORRECTION

*"Expecting Excellence Every Day"*

## MEMORANDUM

**DATE:** February 28, 2004

**TO:** **Calicut-Bey#298836**

**FROM:** **Warden Warren**

**SUBJECT:** **Thanks for your Service as a Unit Representative**

Thank you for serving as a prisoner representative during the August,2003-March,2004 term. You willingly accepted a difficult role where you have, at times, had to take unpopular information from the Administration to your fellow prisoners. Sometimes you also had to bring up sensitive issues. Although this activity brings little personal benefit, the facility is a better place as a result of your efforts.

Again, thank you.

cc: Counselor File
Warden's File

SANDRA SCHULTZ MENGEL
CHIEF CLERK

# CERTIFICATE OF APPRECIATION

***This Honor is Bestowed Upon***

***Calicut –Bey#298836***

*in recognition of and in appreciation for service as the Essex unit representative.*

*Awarded at Thumb Correctional Facility this 1st day of March 2004.*

M. Warren
*Millicent Warren / Warden*

K. Corrigan, ADW 3-5-04
*Kate Corrigan / ADW Programs*

**STATE OF MICHIGAN - CIVIL ACTION**
**CERTIFICATE OF PRISONER ACCOUNT ACTIVITY**
**AND AFFIDAVIT REGARDING SUSPENSION OF PRISONER FEES/COSTS**

| Prisoner-Plaintiff/Petitioner/Appellant name and number | | Defendant's/Respondent's/Appellee's name |
|---|---|---|
| State Of Michigan<br>0 | V | G. Calicut - 298836 |

## CERTIFICATE OF PRISONER ACCOUNT ACTIVITY

I am employed by the Michigan Department of Corrections at the facility identified below, at which the prisoner identified as the Plaintiff/Petitioner/Appellant is currently incarcerated.

Attached is a computer printout which accurately reflects the current spendable balance and all activity within this prisoner's account during the preceding twelve months or, if the prisoner has been incarcerated for less than twelve months, for the period of incarceration. Code "C" on the printout represents a withdrawal from the account and code "D" represents a deposit to the account. The attached printout reflects, for the reported period, an average monthly account deposit (i.e., total deposits divided by number of months) of $62.68, an average monthly account balance (i.e., total deposits minus total withdrawals divided by number of months) of ($3.06). There is a current spendable account balance of $5.85.

Date: 3/12/04

[signature] Signature/Title ... Assistant Manager

Thumb Correctional Facility
Correctional Facility

**Note: Bottom section to be completed by prisoner and sent by prisoner to a Michigan court along with State civil pleading/claim of appeal.**

## AFFIDAVIT REGARDING SUSPENSION OF PRISONER FEES/COSTS

I am the Plaintiff/Respondent/Appellant in the attached pleading/petition/claim of appeal.

I am asking the court for suspension of filing fees and costs because I am indigent as reflected in the Cerificate of Prisoner Account Activity and attached computer printout.

Prisoner's Signature

Subscribed and sworn to before me, a Notary Public,
this ______ day of ______, ______.

My Commission Expires:

CSJ-276 6/97
4835-3276