defendant at Sweet Water Tavern after they talked to Knott, told him about the matter involving Mrs. Parkins, but did not mention the cell phone. (T III, 49-50, 55-57). It was at headquarters, where she said that defendant was under arrest, that police asked for the consent to search for the cell phone, then interrogated him on the basis of the phone alone.

Defendant was already arrested at the Detroit Homicide and in custody while the officers searched his home with the consent form and returned with the phone and a shotgun. He was turned over to Simon and placed in the box for interrogation. It was then that Simon obtained his alleged confession, the only evidence against defendant at trial. (T III, 53).

Defendant said the officers did tell him they wanted to discuss the cell phone at the tavern, and that he went with them because he was not told he was under arrest. He believed he could go back to work, but that was not the case. He thought he was going to headquarters to give a witness statement, when in fact he was under arrest for investigation of the Parkins murder. (T IV, 59-61, 81-82, and compare, T IV, at 81-82). There, defendant was asked to sign the consent form, which he did, still not thinking he was under arrest. Then he was locked in the box, and officers took turns questioning him until 5:00 p.m. and his signature on the statement sometime after 9:00 p.m. (T I, 165-166). By the time defendant signed what Simon wrote, he just wanted to go home. However, that did not happen. (T IV, 75-78, 110-111, 120, 122-123). Defendant had been arrested at Sweet Water Tavern for investigation, thinking he was a witness who would be questioned about a traffic issue. In truth, he was not free to leave, and the police investigated what part John defendant may have had in the crime with he was accused.

Under either Defendant or the police's rendition of when defendant was told that he would be questioned about the cell phone, it is clear that defendant was arrested at the tavern for investigation. Police had defendant's cell phone and

35

address and defendant was not hiding anything from the police, not on the run, so they had no need to arrest defendant without a warrant to obtain evidence.

In Beck v. Ohio, 379 US 89; 85 S Ct 223; 13 L Ed 2d 142 (1964), the Supreme Court established the standard for evaluating the constitutional validity of an arrest:

> "When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." 379 US 89, 96.

Michigan law mirrors the federal constitutional standard. A police officer can arrest without a warrant "when he has reasonable cause to believe that such a person committed it." MCL 764.15(d); MSA 28.874. In People v. Oliver, 417 Mich 366, 374 (1983), the Michigan Supreme Court articulated the standard for the requisite probable cause to arrest:

> "The first rule in determining whether an officer had probable cause to make an arrest is whether there are any facts which would lead a reasonable person to believe that the suspected person has committed a felony. E.g., Semple v. Ward, 235 Mich 45; 196 NW 871 (1924). Secondly, a police officer's belief that a defendant committed a felony must be based on facts which are present at the moment of the arrest. E.g., People v. Stewart, 232 Mich 670; 206 NW 337 (1925)."

Facts which constitute mere suspicion, inarticulate hunches, and vague beliefs of criminal involvement do not amount to probable cause. Henry v. United States, 361 US 98; 70 S Ct 189; 1 L Ed 2d 134 (1959); Wong Sun v. United States, 371 US 471; 83 S Ct 407; 3 L Ed 2d 441 (1963); People v. Griffin, 44 Mich App 174; 60 Dec 385 Mich 775 (1977).

It is well settled that "[w]here there is no probable cause to arrest, the police take a defendant into custody for investigating purposes, any evidence obtained as a result of the unlawful detention or any statement made by the defendant obtained must be suppressed. People v. Fry, 175 Mich App 393, 30

36

(1963)." People v. Lewis, 160 Mich App 10, 25 (1987). In Taylor v. Alabama, 457 US 687, 689-690; 102 S Ct 2664; 73 L Ed 2d 314 (1982), the United States Supreme Court outlined the relevant rule:

> "In Brown v. Illinois, [422 US 590; 95 S Ct 2254; 45 L Ed 2d 415 (1975)] supra, the police arrested suspects without probable cause. The suspects were transported to police headquarters, advised of their Miranda rights and interrogated. They confessed within two hours of their arrest. This Court held that the confession were not admissible at trial, reasoning that a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the casual connection between the illegal arrest and the confession so that the confession is 'sufficiently an act of free will to purge the primary taint.' Brown v. Illinois, supra, at 602 [quoting Wong Sun v. United States, 371 US 471, 486, 9 L Ed 2d 441, 83 S Ct 407 (1963)]. See also Dunaway v. New York, supra, at 217. This Court identified several factors that should be considered in determining whether a confession has been purged of the taint of the illegal arrest: '[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct.' Brown v. Illinois, supra, at 603-604 (citations and footnotes omitted); Dunaway v. New York, 442 US, at 218. The State bears the burden of proving that a confession is admissible. Ibid."

Michigan appellate courts have consistently followed the principles announced in Brown and Dunaway. People v. Casey, 411 Mich 179 (1981); People v. Summers, 407 Mich 432 (1979), rev'd on other grounds sub nom Michigan v. Summers, 452 US 692 (1981); People v. Mosley (After Remand), 400 Mich 181 cert den 454 US 951 (1977); People v. Emanuel, 98 Mich App 637 (1980); People v. Mallory, 94 Mich App 143 (1980).

That defendant was "arrested" when the officers took him into custody is beyond dispute. The arresting officers in this case was a member of the Stakeout Division. There was no independent judgment as to whether to arrest defendant, as there was no determination as to whether the defendant was identified as the murderer

37

(i.e., whether there was probable cause for the arrest).

The facts provided by the officers do not amount to probable cause. Defendant was locked up and held for investigation. The Supreme Court in Dunaway, supra, at 212-213, and in Brown, supra, at 605 have condemned arrests for questioning or investigation. In Brown, the Court stated:

> "The impropriety of the arrest was obvious; awareness of the fact was virtually conceded by the two detectives when they repeatedly acknowledged, in their testimony, that the purpose of their action was 'for investigation' or for 'questioning.' . . . The arrest, both in design and in execution, was investigatory. The detectives embarked upon this expedition for evidence in the hope that something might turn up." 422 US at 605.

Since Defendant was arrested in violation of his constitutional right to be free from unreasonable seizure without probable cause, the evidence obtained by the police should not have been admitted at trial unless purged of the taint of the illegal arrest. See Wong Sun v. United States, supra. Brown v. Illinois, supra, made it clear that Miranda warnings were designed as a 5th Amendment protection and cannot cure an illegal arrest. The Court in Brown at 602 stated:

> "If Miranda warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted . . . Arrests made without warrant or without probable cause, for questioning or 'investigation' would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving Miranda warnings."

In Taylor v. Alabama, supra, at 691, the Court noted that giving of three sets of Miranda warnings was insufficient to break the causal chain.

Voluntariness is also irrelevant. "Indeed, if the Fifth Amendment has been violated, the Fourth Amendment issue would not have to be reached." Brown, supra, at 601. The Court in Dunaway, supra, at 217-218 stated:

38

> Brown articulated a test designed to vindicate the 'distinct policies and interests of the Fourth Amendment.' Id., at 602. Following Wong Sun, the Court eschewed any per se or 'but for' rule, and identified the relevant inquiry as 'whether Brown's statements were obtained by exploitation of the illegality of his arrest,' 422 US at 600; See Wong Sun v. United States, supra, at 488. Brown's focus on the 'casual connection between the illegality and the confession, 422 US at 603, reflected the two policies behind the use of the exclusionary rule to effectuate the Fourth Amendment. Where there is a close casual connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but use of the evidence is more likely to compromise the integrity of the courts.'

In Taylor v. Alabama, the Supreme Court refused to find that the six hour period between the arrest and the statement was a break in the casual chain: "[A] difference of a few hours is not significant where, as here, petitioner was in police custody, unrepresented by counsel and he was questioned on several occasions, fingerprinted, and subject to a lineup." Id., 457 US at 691.

Likewise, in the instant case, defendant was not purged. While there was not an extremely short interval between the time of the warrantless arrest and Defendant's statements, there were no intervening circumstances that purged the taint of the illegal arrest.

As the taint of Defendant's illegal arrest was not purged, admission of Defendant's post arrest statements are reversible error, and Defendant, after having an evidentiary hearing pursuant to People v. Walker (On Rehearing), 374 Mich 331, 338 (1965), to determine if the evidence should have been suppressed, and thereafter defendant should be entitled to a new trial.

39

V. DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION IN THE FOLLOWING WAYS:

The Sixth Amendment provides that in all criminal prosecutions "the accused shall enjoy the right to . . . have the assistance of counsel for his defense." Strickland v. Washington, 466 US 668 (1984); United States v. Cronic, 466 US 648 (1984); People v. Pickens, 446 Mich 298 (1994); US Const Ams VI, XIV; Mich Const 1963, art 1, § 20.

Defendant must identify the specific acts or omissions of counsel which defendant alleges were not the result of "reasonable professional judgment." Strickland 105 S Ct at 2066. Defendant must also show that counsel's performance was "deficient." To establish this, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id at 2064. The defendant must also show that counsel's deficient performance prejudiced the defense. People v. Lavearn, 201 Mich App 679 (1993). Prejudice will be found where the defendant shows that "there is a reasonable probability that absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id at 2068-2069.

The Strickland Court adopted the American Bar Association guidelines as appropriate to determine whether defense counsel performed at least as well as a lawyer with ordinary training and skill in the criminal law. See ABA Standard 4-3.6; Michigan Rules of Professional Conduct, 1.1.

    A. Trial Counsel Was Ineffective In Failing To Request That The Trial Court Instruct That The Killing And Larceny Were Unrelated.

The instant case did not go to the jury in a logical and coherent form because of counsel's instruction related error. Counsel failed to request an

40

instruction that if the killing and larceny were unrelated then Defendant was only guilty of second degree murder (See facts in Issue I, supra, herein incorporated). People v. Bennie Thomas, 406 Mich 971 (1979); People v. Hunter, 209 Mich App 280 (1995)(defendant's murder and subsequent sexual penetration of the victim did not constitute felony murder because the victim was dead and no longer a person who could refuse consent).

Counsel's mistake was such a serious mistake that defendant was denied a fair trial. People v. DeGraffenried, 19 Mich App 702 (1969). In People v. Stapf, 155 Mich App 491, 497-500 (1986), counsel argued that defendant was guilty of only assualt and battery, in a kidnapping case but failed to make a record request for an instruction on the lesser offense. On appeal that defendant claimed that counsel made a proper request for the instruction in chambers and off the record, and the Court remanded for a determination of who had erred, the Court or counsel. In the instant case counsel inadequately represented defendant and the trial court had an obligation to give the proper instruction even though they were not requested.

> E. Trial Counsel Was Ineffective For Failing To Bring To The Court's Attention That Defendant's Conviction Must Be Reduced To Second Degree Murder Where The Subsequent Alleged Larceny Occurred From A Dead Body.

Counsel failed to request an directed verdict of aquittal or object that since the killing and larceny were unrelated then defendant was only guilty of second degree murder (See facts from Issue II, supra, herein incorporated).

Counsel failed to argue that defendant could not commit a larceny from a dead body or argue this theory which was consistent with the prosecution's presentation of it's case. People v. Bennie Thomas, 406 Mich 971 (1979); People v. Hunter, 209 Mich App 280 (1995)(defendant's murder and subsequent sexual

41

penetration of the victim did not constitute felony murder because the victim was dead and no longer a person who could refuse consent).

Counsel's mistake was such a serious mistake that defendant was denied a fair trial. People v. DeGraffenried, 19 Mich App 702 (1969); People v. Pickens, 446 Mich 298 (1994); Beasley v. United States, 491, F.2d 687 (CA 6, 1974). Had counsel argued that defendant was guilty of only second degree murder, coupled with this being Defendant's first felony conviction, defendant could have very possibly received a indeterminate sentence as opposed to the present life sentence. Counsel's failure to make an obvious argument on Defendant's behalf constitutes ineffective assistance of counsel in this case. Quartararo v. Fogg, 679 F. Supp. 212, 244-247 (ED NY, 1988), Aff'd 849 F.2d 1467 (CA 2, 1988).

  C. Trial Counsel Was Ineffective In Failing To Object When Defendant Was Denied His Due Process Right To A Fair Trial Where The Prosecutor Presented 404(B) Evidence That Was Unfairly Prejudicial.

Trial counsel was also ineffective for failing to object to improper prosecutorial argument that defendant was a serious crack cocaine drug addict who was unpredictable (T IV, 177-178)(See also Issue III, herein incorporated). Such an argument is improper. As was the case, a defendant's drug use is an extremely inflammatory subject. There was testimony that defendant was so addicted to crack cocaine that he was unable to function without it, or that he would steal or rob to get it. That being said, the prosecutor's references to Defendant's drug problem in closing should have been objected too, because they deprived defendant of a fair trial. People v. Margaret Jones, 48 Mich App 334 (1973); People v. Morgan, 86 Mich App 226 (1978); People v. Walker, 86 Mich App 155 (1978); People v. McKinney, 410 Mich 413 (1981). The argument of the prosecution was not based upon evidence, and was directed at disparaging the defendant's credibility to distract the jurors

42

from their duty as triers of fact, and inflame their passion to convict where the case was factually lacking. People v. Tommolino, 187 Mich App 14 (1991).

        D.   Trial Counsel Was Ineffective For Failing To Move For The Suppression Of The Consent To Search, Statement's At Police Headquarters Where The Police Lacked Probable Cause For The Defendant's Warrantless Arrest.

Defense counsel failed to provide defendant with the effective assistance of counsel when trial counsel failed to seek suppression of Defendant's alleged statement and consent to search, when both were fruits of defendant's illegal arrest for investigatory purposes.

Trial counsel did not object to admission of the statement Barbara Simon offered at preliminary examination or trial. Nor did counsel object to the search pursuant to the consent Defendant signed after Vishara came to him with it when defendant was already in custody. Simon took Defendant's statement while defendant sat in a locked interrogation room at Detroit Police Headquarters, after he had been there a few hours. All the police officers went to Sweet Water Tavern to talk to Defendant, before they had even confirmed that he truely had the phone, and officers testified that defendant was under arrest when they took him to the police station. (T I, 161-162, 163-165; T II, 170-171; T III, 49-50, 55-57). Defendant on the other hand, thought he was going with police to answer questions for them. (T IV, 59-61).

There was no doubt that police took defendant into custody while using defendant for investigatory purposes, as there was no probable cause to arrest. People v. Champion, 452 Mich 92, 115 (1996); People v. Russo, 439 Mich 584, 603-604 (1992). While State and Federal Courts have condemned warrantless arrest made without probable cause that are for investigatory purposes. People v. Boyd, 416 Mich 538 (1982); Hayes v. Florida, 470 US 811 (1985). Here the

Detroit Police worked on defendant like the pit-crew in the Daytona 500 car race.

Here, no intervening circumstances developed probable cause sufficient to purge the initial taint. Defendant was in custody when he signed the Consent to Search form brought by Visbara, who incredibly denied even talking to defendant. (T II, 174-176; T III, 12-13, 15-16, 24-25). Defendant was in custody for two hours before the interrogation took place. No new evidence that had not been supplied to the police before the arrest was developed that would establish probable cause to believe the defendant killed Ms. Perkins. Before the interrogation the police suspected (as Knott and Defendant told them), and then found out that defendant had the decedent's cell phone. Defendant told them as much at the outset and Knott told them as much when he reported the call. However, they placed defendant in custody before obtaining the Consent to Search from him. By the time Simon spoke to Defendant, nothing more than Defendant's possession of the cell phone was known. This was insufficient evidence without more to justify a rational person in believing that Defendant was the killer.

Defendant asked trial counsel to hold a <u>Walker</u> hearing to support his statement to Simon on the ground that it was involuntary because it was induced by false promises on the part of the police, and by Defendant's fear and ignorance of the consequences. (Appendices D and F). Trial counsel failed to request a pretrial hearing under <u>People</u> v. <u>Walker</u>, 374 Mich 331, 338 (1965), so that the trial court could determine whether Defendant's confession was sufficiently voluntary to be admitted. <u>Mincey</u> v. <u>Arizona</u>, 437 US 385; 98 SC t 2407; 57 L Ed 2d 290 (1978).

Counsel may certainly be ineffective where he fails to move for a hearing on the voluntariness of a Defendant's confession, and where counsel's inaction

44

was, as in this case, decisive of the outcome of the trial, defendant was deprived of a reasonably likely chance of aquittal. People v. Means (On Rem), 97 Mich App 641 (1980); People v. Davis, supra, 102 Mich App at 403.

VI.    DEFENDANT HAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL DURING HIS CONSTITUTIONALLY PROTECTED STATE APPEAL OF RIGHT IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

Both the Sixth and Fourteenth Amendments to the United States Constitution, and their Michigan counterparts, Mich Const 1963, Art 1, § 20, was abridged not only during the trial, but during the entire appellate process. The due process provisions of the Fourteenth Amendment entitle a criminal defendant to the effective assistance of counsel in his first appeal as of right. Evitts v. Lucey, 469 US 387 (1985). The issue of ineffective assistance of appellate counsel is exacerbated in that any claim which could have been, but which was not, raised in the defendant's initial appeal of right is waived for purposes of any subsequent appeal, <u>unless the failure to raise the claim in the appeal of right has resulted from ineffective assistance of original appellate counsel</u>. People v. Wolfe, 156 Mich App 235 (1986).

Also it should be added that in Jones v. Barnes, 103 S Ct 3308 (1983), the United States Supreme Court held that counsel has no constitutional duty to raise all nonfrivolous issues requested by the defendant. Justice Blackmun concurring insisted, however, that counsel's failure to raise a <u>requested</u> nonfrivolous issue on appeal constitutes "cause and prejudice" permitting later habeas consideration of that claim. Jones v. Barnes, supra, 103 S Ct at 3314. The emphasized requisite is met in this case.

The standard for determining whether effective assistance of counsel has been provided in an appeal is measured along the same standards used in determining whether a defendant has received effective assistance of counsel at trial. People v. Johnson, 144 Mich App 125 (1985); People v. Reed, 198 Mich App 639, 645 (1993); People v. Hurst, 205 Mich App 634, 641 (1994); Brown v. Foltz, 763 F.2d 191, 198 (6th Cir. 1985)(Contie, J., dissenting); Gray v. Greer, 778 F.2d 350 (7th

46

Cir. 1985). With reference to that standard, the constitutional right to the effective assistance of counsel entitles a criminal defendant to the effective assistance of counsel at all critical stages during the criminal process. Powell v. Alabama, 287 US 45 (1932); Glasser v. United States, 315 US 50 (1942). A criminal appeal is a critical stage. Evitts, supra.

In order to show that the defendant has been denied the effective assistance of counsel, the defendant must demonstrate that, considering all the circumstances, his counsel Sarah D. Hunter and Jacqueline McCann of the State Appellate Defender Office performance fell below the objective standard of reasonableness, so prejudicing the defendant that he was denied a fair trial (here, appeal), and that a reasonable probability exists that, but for counsel's conduct, the result of the proceeding would have been different. Strickland v. Washington, 466 US 668 (1984) adopted in People v. Pickens, 446 Mich 298 (1994).

In order for defendant's appellate counsel to make a proper evaluation of the appeal and thereby properly advise the defendant is that "the appellate lawyer must master the record, thoroughly research the law and exercise judgment in identifying the argument that may be advanced on appeal." McCoy v. Court of Appeals Wisconsin, 486US 429, 438 (1988). Basic investigation is a prerequisite to the exercising of sound trial strategy. Where such investigation is not done, courts have declined to grant counsel's decision the high measure of deference ordinarily afforded to appellate counsel. United States v. Barbour, 270 US App DC 111; 813 F.2d 1232, 1234 (1987)("Only when reasonable investigation has been performed is counsel in a position to make informed tactical decisions. It is especially important counsel adequately investigate the case in order that at the very least he can provide minimally competent professional representation."); Neally v. Cabana, 764 F.2d 1173, 1178 (CA 5, 1985); House v. Balkcom, 725 F.2d

608, 617-618 (CA 11, 1984); Crisp v. Ducksworth, 743 F.2d 580, 583 (CA 7, 1983).

The burden of proof in a claim involving ineffective assistance of counsel lies with the defendant making the claim, and thus defendant silmutaneously files a motion for an evidenciary hearing to make a record. People v. Ginther, 390 Mich 436 (1973); People v. Tranchida, 131 Mich App 446 (1984).

Defendant submits that appellate counsel was ineffective for failing to raise issues one through five, which undermined the defendant's opportunity for success on appeal, as counsel's conduct so undermined the proper functioning of the adversarial process that the appeal cannot be relied on as having a just result. Strickland v. Washington, supra, 466 US at 686; 104 S Ct at 2064.

VII. DEFENDANT HAS SHOWN "GOOD CAUSE" AND "ACTUAL PREJUDICE" AND IS ENTITLED TO HAVE THIS COURT REACH THE MERITS OF THESE CLAIMS.

Pursuant to Michigan's postconviction proceedings entitled Motion For Relief From Judgment, before a court can make a decision on whether to grant relief from the judgment, it must first decide whether defendant has met the "good cause" and "actual prejudice" test of MCR 6.508(D)(3)(a) and (b). People v. Reed, 449 Mich 375 (1995); Wainwright v. Sykes, 433 US 72 (1977); United States v. Frady, 546 US 152 (1982).

This Court may also waive the good cause requirement, but not the actual prejudice requirement if there is a significant possibility that the defendant is innocent of the crime. People v. Watroba, 193 Mich App 124 (1992); Murray v. Carrier, 477 US 478, 496 (1986).

Defendant submits that in the issues raised, trial counsel was ineffective and appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness. People v. Reed, supra. Defendant also submits that he is actually innocent. Schlup v. Delo, 513 US 298, 321 (1995); People v. Watroba, and Murray v. Carrier, supras'.

## REQUESTED RELIEF

WHEREFORE Defendant George Calicut Jr., respectfully moves this Honorable Court to conduct whatever procedures it deems necessary and thereafter grant defendant relief from this Judgment.

Respectfully submitted

Dated: 8-27-04

Mr. George Calicut Jr. # 298826
Defendant in Propria Persona
Thumbs Correctional Facility
3225 John Conley Drive
Lapeer, Michigan 48446

49

Mr. George Calicut Jr., #298836
Defendant in Propria Persona
Muskegon Correctional Facility
2400 S. Sheridan Road
Muskegon, Michigan 49442

Clerk of the Court
Michigan Supreme Court
2nd Floor
Law Building
525 Ottawa
P.O. Box 30052
Lansing, Michigan 48909

Dated:

Re: <u>People V. George Calicut Jr.</u>
Michigan Supreme Court No.
Michigan Court of Appeals No.#254650
Lower Court No. 99-3147

RECEIVED
SEP - 1 2004
CORBIN DAVIS
CLERK SUPREME COURT

Dear Clerk of the Court:

Enclosed for filing with this Court, please find one original of the following:

1. Motion For Suspension of Fees and Costs;
2. Motion to Remand;
3. Proof of Service.

I cannot afford the costs of copies as I have no money in my account to cover the costs and the prison policy prohibits the law library staff from making the copies and putting a hold on my prison account to take out the money in the future.

Very Truly Yours,

George Calicut Jr. #298836
George Calicut Jr. #298836